IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff | § |
| | § |
| v. | § No. 3:25-CV-02849 |
| | § |
| HIEN THAI d/b/a SOLAR NAILS and | § |
| KIM MAI NGUYEN, | § |
| | § |
| Defendants | § |

## COMPLAINT

The United States of America files its Complaint against the Defendants Hien Thai d/b/a Solar Nails and Kim Mai Nguyen.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 3001 *et seq.*

2. The Court may exercise personal jurisdiction over Hien Thai and Kim Mai Nguen because each of them resides in the Nothern District of Texas.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because Hien Thai and Kim Mai Nguen reside in this district.

### PARTIES

4. Plaintiff is the United States of America, acting on behalf of the Small Business Administration ("SBA").

5. Defendant Hien Thai is a natural person operating Solar Nails as a sole proprietorship and who resides in the Northern District of Texas. Kim Mai Nguyen is a natural person who resides in the Northern District of Texas.

## THE DEBT

6. On or about March 13, 2017, Hien Thai, on behalf of his sole proprietorship Solar Nails, applied for a $25,000.00 line of credit with BBVA Compass Bank and Kim Mai Nguyen guaranteed the line of credit. A copy of the application is attached hereto and incorporated herein by reference as Exhibit A.

7. On or about March 24, 2017, BBVA Compass Bank approved the line of credit. A copy of this approval is attached hereto and incorporated herein by reference as Exhibit B. This loan was authorized and guaranteed by the SBA under its SBA Express/Export Express Loan program as provided in 15 U.S.C. § 636(a)(31).

8. The lender disbursed $32,530.00 in funds under the line of credit. Of this amount, only $18,004.07 was repaid, with $13,255.50 of that amount applied to the principal of the outstanding debt, leaving an unpaid principal balance of $19,274.50. A copy of the Lender's Transcript of Account is attached hereto and incorporated herein by reference as Exhibit C.

9. The SBA paid a claim to BBVA Compass pursuant to its own guarantee of the loan. Thereafter, on May 28, 2020, BBVA Compass assigned all of its interest in the note and the guarantee to the SBA. A copy of the assignment is attached hereto and incorporated herein by reference as Exhibit D. SBA is therefore the owner and holder of the loan and is entitled to enforce the debt.

10. The SBA referred collection of the debt to the U.S. Treasury Department on June 22, 2022. The loan is currently in default and as of August 13, 2025 there is due and owing an outstanding principal balance of $19,274.50, plus accrued interest of $8,883.79, with interest accruing at $4.92 per day, plus administrative fees of $10,160.20 as provided for by 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j); 31 C.F.R. 901.1(f); and 28 U.S.C. 527. A copy

of the Certificate of Indebtedness is attached hereto and incorporated herein by reference as <u>Exhibit E</u>.

11. The United States is permitted to recover post-judgment interest on the amount awarded, and the interest will compound annually at the legal rate. See 28 U.S.C. § 1961.

## RELIEF REQUESTED

The United States respectfully requests judgment against Defendant in the amount of $38,131.16 with prejudgment interest on this amount at the rate of $4.92 per day from after August 13, 2025 to the date of judgment. The United States further requests interest at the post-judgment rate thereafter, its costs of suit and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

RAY & WOOD

By _____
Doug W. Ray
State Bar No. 16599200

300 Beardsley Lane, Suite B-100
Austin, Texas 78746
(512) 328-8877 (Telephone)
(512) 328-1156 (Facsimile)
dray@raywoodlaw.com
**ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA**

Hien Henry
214-808-4789
app. 1283767

# BBVA Compass

## Convenience Line of Credit Application

### Applicant Information

SOLAR NAILS
*Applicant's Legal Name (under which tax returns are filed)*

SOLAR NAILS
*Business Name (if different from Applicant)*

| 3600 GUS THOMASSON STE 1 | MESQUITE | TX | 75150 |
|---|---|---|---|
| Applicant's Business Street Address (No P.O. Box) | City | State | Zip |

| 3600 GUS THOMASSON STE 1 | MESQUITE | TX | 75150 |
|---|---|---|---|
| Billing Address | City | State | Zip |

| 51411 | 9726989888 | HMAITHAI@YAHOO.COM | | |
|---|---|---|---|---|
| Business' Federal Tax ID# (or Sole Proprietor's Social Security #) | Business Phone | Business E mail | | |

| TX | 01/01/1985 | 3 | 280,000.00 | |
|---|---|---|---|---|
| State In Which Business Is Organized | Date Business Established | Number of Employees | Previous Year Revenue/Sales | Previous Year Net Income |

| SOLE PROPRIETOR | DENTIST'S OFFICE | US. BUSINESS |
|---|---|---|
| Ownership Structure | Business Description | Type of Business |

### Participant(s) Information

The information requested below must be provided by: (1) The Applicant (if the Applicant is a sole proprietor) or by each person who has an ownership interest in the Applicant (if the Applicant is a corporation, LLC, LLP, partnership or other entity); and (2) by any other person who will be personally liable for credit extended to the Applicant under this Application. Each person providing the requested information is referred to as an "Owner", regardless of whether the person has any ownership interest in the Applicant.

#### GUARANTOR

KIM NGUYEN
*Full Legal Name (No Nicknames Or Short Names)*

| 3017 HIBISCUS DR | GARLAND | TX | 75040 |
|---|---|---|---|
| Physical Residential/Business Address (No P.O. Boxes Or Mail Stops) | City | State | Zip |

| 9726758875 | | | /1968 |
|---|---|---|---|
| Home Phone | Cell Phone | Social Security Number | Date Of Birth |

| DRIVER'S LICENSE:U.S.ONLY | 5600 | TX | 01/01/0001 | 12/22/2020 |
|---|---|---|---|---|
| I.D. Type | I.D. Number | Issued by (State/Country) | Issue Date | Exp. Date |

| HTHAI03@YAHOO.COM | 0.00 | |
|---|---|---|
| Email Address | Personal Net Worth | Monthly Housing Payment(s) |

| 15 YEARS | Rent __ X Own __ | Y |
|---|---|---|
| Length Of Time At Current Address | | U.S. Citizen?  If No, Country of Origin |

40,000.00   *Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.
*Last Year's Annual Income*

0%
*Percentage Business Ownership*   Title

#### OWNER

HEIN THAI
*Full Legal Name (No Nicknames Or Short Names)*

| 3017 HIBISCUS DR | GARLAND | TX | 75040 |
|---|---|---|---|
| Physical Residential/Business Address (No P.O. Boxes Or Mail Stops) | City | State | Zip |

| 9726758875 | | | /1969 |
|---|---|---|---|
| Home Phone | Cell Phone | Social Security Number | Date Of Birth |

| DRIVER'S LICENSE:U.S.ONLY | 7250 | TX | 04/23/2013 | 04/25/2019 |
|---|---|---|---|---|
| I.D. Type | I.D. Number | Issued by (State/Country) | Issue Date | Exp. Date |

| | 0.00 | |
|---|---|---|
| Email Address | Personal Net Worth | Monthly Housing Payment(s) |

| 15 YEARS | Rent __ X Own __ | Y |
|---|---|---|
| Length Of Time At Current Address | | U.S. Citizen?  If No, Country of Origin |

40,000.00   *Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.
*Last Year's Annual Income*

100%
*Percentage Business Ownership*   Title

---

*Full Legal Name (No Nicknames Or Short Names)*

| | | | |
|---|---|---|---|
| Physical Residential/Business Address (No P.O. Boxes Or Mail Stops) | City | State | Zip |

**EXHIBIT A**

_____
*Full Legal Name (No Nicknames Or Short Names)*

_____
*Physical Residential/Business Address (No P.O. Boxes Or Mail Stops)*   *City*   *State*   *Zip*

_____
*Home Phone*   *Cell Phone*   *Social Security Number*   *Date Of Birth*

_____
*I.D. Type*   *I.D. Number*   *Issued by (State/Country)*   *Issue Date*   *Exp Date*

_____
*Email Address*   *Personal Net Worth*   *Monthly Housing Payment(s)*

____YEARS_____Rent_____Own_____
*Length Of Time At Current Address*   *U.S. Citizen?  If No, Country of Origin*

*Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.*

_____
*Last Year's Annual Income*

_____
*Percentage Business Ownership*   *Title*

---

_____
*Full Legal Name (No Nicknames Or Short Names)*

_____
*Physical Residential/Business Address (No P.O. Boxes Or Mail Stops)*   *City*   *State*   *Zip*

_____
*Home Phone*   *Cell Phone*   *Social Security Number*   *Date Of Birth*

_____
*I.D. Type*   *I.D. Number*   *Issued by (State/Country)*   *Issue Date*   *Exp Date*

_____
*Email Address*   *Personal Net Worth*   *Monthly Housing Payment(s)*

____YEARS_____Rent_____Own_____
*Length Of Time At Current Address*   *U.S. Citizen?  If No, Country of Origin*

*Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.*

_____
*Last Year's Annual Income*

_____
*Percentage Business Ownership*   *Title*

---

_____
*Full Legal Name (No Nicknames Or Short Names)*

_____
*Physical Residential/Business Address (No P.O. Boxes Or Mail Stops)*   *City*   *State*   *Zip*

_____
*Home Phone*   *Cell Phone*   *Social Security Number*   *Date Of Birth*

_____
*I.D. Type*   *I.D. Number*   *Issued by (State/Country)*   *Issue Date*   *Exp Date*

_____
*Email Address*   *Personal Net Worth*   *Monthly Housing Payment(s)*

____YEARS_____Rent_____Own_____
*Length Of Time At Current Address*   *U.S. Citizen?  If No, Country of Origin*

*Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.*

_____
*Last Year's Annual Income*

_____
*Percentage Business Ownership*   *Title*

---

_____
*Full Legal Name (No Nicknames Or Short Names)*

_____
*Physical Residential/Business Address (No P.O. Boxes Or Mail Stops)*   *City*   *State*   *Zip*

_____
*Home Phone*   *Cell Phone*   *Social Security Number*   *Date Of Birth*

_____
*I.D. Type*   *I.D. Number*   *Issued by (State/Country)*   *Issue Date*   *Exp Date*

_____
*Email Address*   *Personal Net Worth*   *Monthly Housing Payment(s)*

____YEARS_____Rent_____Own_____
*Length Of Time At Current Address*   *U.S. Citizen?  If No, Country of Origin*

*Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.*

_____
*Last Year's Annual Income*

_____
*Percentage Business Ownership*   *Title*

---

_____
*Full Legal Name (No Nicknames Or Short Names)*

_____
*Physical Residential/Business Address (No P.O. Boxes Or Mail Stops)*   *City*   *State*   *Zip*

**EXHIBIT A**

# Request for Credit

## Convenience Line of Credit

If a Convenience Line of Credit is requested and approved, BBVA Compass will permit the Applicant and each Owner signing this Application to request advances and to sign convenience checks on the Convenience Line of Credit Account, and to take any other actions on the Applicant's behalf with respect to the Convenience Line of Credit Account.

**Requested Credit Limit: $** __25,000.00__  (Not to exceed $100,000)

**Purpose for Requested Convenience Line of Credit**
INCREASE BUSINESS CASH FLOW

## Overdraft Protection

Overdraft Protection is a revolving line of credit that, if requested and approved, will provide automatic advances to cover overdrafts in a designated BBVA Compass Checking Account. If you request and are approved to receive Overdraft Protection for more than one Checking Account, we will establish a separate Overdraft Protection line of credit for each Checking Account to receive this protection.

| BBVA Checking Account | Requested Credit Limit | BBVA Checking Account | Requested Credit Limit |
|---|---|---|---|
| BBVA Checking Account | Requested Credit Limit | BBVA Checking Account | Requested Credit Limit |

## Agreement to Credit Terms

BBVA Compass requires that, as a condition to extending credit pursuant to this Application, each Owner identified in the Owner(s) Information section above must sign this Application and agree to repay all amounts owed in connection with any Convenience Line of Credit or Overdraft Protection provided to the Applicant. Each owner must also provide a properly signed and dated IRS form 4506-T.

**Implementation Process.** Upon receiving a completed Application, BBVA Compass will review the credit of the Applicant and each Owner. If BBVA Compass approves any credit to be extended to the Applicant, BBVA Compass will mail an Approval Letter to the Applicant, as agent for the Owners, at the Applicant's address in this Application. The terms of any credit approved by Compass may vary from the terms requested in this Application The Approval Letter will include, among other information, the following:

- If the Applicant is approved for a Convenience Line of Credit Account - The Approval Letter will include the credit limit for this Account, the interest rate applicable to this Account, the Account number, and an explanation of how the Applicant may obtain advances on this Credit Line. This Approval Letter also will include the Convenience Line of Credit Terms and Conditions and a copy of this Application. These Terms and Conditions, together with the Application and the Approval Letter, comprise the full agreement governing each Convenience Line of Credit Account (the "Credit Line Agreement").

- If the Applicant is approved for an Overdraft Protection Account. The Approval Letter will include the credit limit for this Account and the interest rate applicable to this Account, and the Account number. This Approval Letter also will include the Business Overdraft Protection Terms and Conditions and a copy of this Application. These Terms and Conditions, together with the Application and the Approval Letter, comprise the full agreement governing each Overdraft Protection Account (the "Overdraft Protection Agreement").

The Credit Line Agreement and the Overdraft Protection Agreement are referred to below as the "Credit Agreements." The Applicant should retain all Credit Agreements and any other documents provided by BBVA Compass in connection with credit extended pursuant to this Application.

By signing this Application, whether as the Applicant or an Owner, each person:

1. Requests BBVA Compass to extend the credit specified above to the Applicant, and understands that married Applicants may apply for separate accounts;
2. Promises that (a) all of the information provided in this Application is accurate and complete, and includes all of the Applicant's obligations; and (b) if BBVA Compass approves any credit to be extended under this Application, that credit will be used only for business purposes, and not for any personal, household or family purposes;
3. Authorizes BBVA Compass to investigate and to obtain and exchange information about that person, including credit reports and other information about that person's creditworthiness and information from the Internal Revenue Service, and, if BBVA Compass approves any credit to be extended under this Application, to update that information from time to time;
4. Authorizes BBVA Compass to share information about that person with its agents, service providers, and affiliates for, among other purposes, evaluating this Application and offering products and services BBVA Compass believes may be of interest to that person;
5. Acknowledges that BBVA Compass makes all credit decisions and extends all credit under the Credit Agreements from Alabama, and that each Credit Agreement is governed by Alabama law and

**EXHIBIT A**

agrees that the person providing the telephone number can be contacted by the employee and/or recorded, and (b) BBVA Compass may contact that person using (1) any information or phone numbers (including cell phone numbers and text messages) and email addresses provided on this Application or otherwise, and (2) an automated telephone dialing system and/or artificial or prerecorded voice message, even if the person is charged for the call under the person's phone plan;

10. Authorizes Lender, except as expressly prohibited by applicable law, to charge or setoff all amounts due under any one or more Credit Agreements against any and all such accounts held by that person at BBVA Compass (whether checking, savings, or some other kind of account), including all accounts held jointly with someone else and all accounts that person may open in the future, but not including any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law; and

11. Promises to repay all credit extended to the Applicant pursuant to this Application, and to pay all other amounts and to perform or have performed all other obligations owed in connection with such credit extensions, all in accordance with the terms of each applicable Credit Agreement; agrees that the Applicant and each Owner signing below will be jointly and severally liable for any such credit extensions; waives any right to require BBVA Compass to bring an action against the Applicant before seeking to collect any amounts owed under any applicable Credit Agreement directly from any one or more Owners; and agrees that BBVA Compass may renew or extend (repeatedly and for any length of time) any such credit extensions and may release the Applicant and/or any one or more Owners without the consent of or notice to anyone and without affecting the liability of any other person signing this Application.

All Applications are subject to credit approval by BBVA Compass. An Application is not a guarantee of approval on any credit extension.

Each owner identified in Owner's section of this Application must sign here:

If more than one person is signing this Application as Applicant, each understands that this Application is for a joint credit and, if approved, each person signing this Application will be responsible for all the amounts owed at any time.

If the Owners signing this Application do not meet BBVA Compass standards of creditworthiness for the amount and terms of the requested credit or if an Owner submits joint tax returns and/or financial statements, BBVA Compass may require an additional Owner to sign and agree to the terms of this Application. BBVA Compass will never require the signature of a spouse as a condition of extending credit. Any requirement for an additional Owner will be based solely on BBVA Compass' standards of creditworthiness for the requested credit.

We intend to apply for joint credit.

| Name | Signature | Initials | Date |
|---|---|---|---|
| HIEN T. THAI | /s/ | H.T | 3/13/2017 |
| Kim Nguyen | /s/ | MN | |

If the Applicant is a Corporation, LLC, Partnership, LLP or other entity - An authorized representative of the Applicant must sign here:

Name: HIEN T. THAI
Signature: /s/
Title: Owner
Date: 3/13/2017

If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: BBVA Compass Business Loan Center, 401 West Valley Ave., Homewood, Alabama 35209, 1-866-707-4252; within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement.

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income is derived from any public assistance program, or because the applicant in good faith has exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning

**EXHIBIT A**

**BBVA Compass**

CONVENIENCE LINE OF CREDIT ACCEPTANCE LETTER
(the "Acceptance Letter")

March 27, 2017
SOLAR NAILS
3600 GUS THOMASSON STE 155
MESQUITE, TX 75150

Re: Your Convenience Line of Credit

Account Number <u>6747302314</u> ("Account")

Contract Date __3/24/17__

Dear SOLAR NAILS

Compass Bank is pleased to notify you that it has approved your application for a Convenience Line of Credit. The Account Number for your Account is set forth above. The following terms apply to your Account:

1. The amount of your Approved Credit Line is $25,000.00.

2. The Interest Rate on your Account is Compass Bank Prime plus **4.06 %** (the "Interest Increment"), which is currently **8.06 %**. This interest rate will change as Compass Bank Prime changes.

3. The annual fee for your Account is stated in paragraph 11 of the TERMS AND CONDITIONS. Please refer to the enclosed TERMS AND CONDITIONS for the amount of this fee and for a description of how Compass Bank will post the fee to your Account.

You will receive, by separate delivery, your Convenience Line of Credit checks with which you may access your Account. These checks are to be used **EXCLUSIVELY FOR BUSINESS PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

We have enclosed a copy of the Application Provisions (the "Application Provisions") that were contained in Part B of the Convenience Line of Credit Application, Agreement, Promissory Note and Guaranty that you signed in connection with your Account (the "Application Agreement"). We have also enclosed a copy of the Convenience Line of Credit TERMS AND CONDITIONS (the "TERMS AND CONDITIONS") that you received when you signed the Application Agreement. This Acceptance Letter, the Application Agreement, the Application Provisions and the TERMS AND CONDITIONS collectively govern your rights and obligations with respect to your Account. If you have not already done so, please review these documents carefully since **any request for credit under the Convenience Line of Credit Account by you or any Applicant listed on Part A of the Application Agreements will be conclusive evidence that you have received, reviewed and agreed to all the provisions of these documents.**

You should retain all of these documents for your records.

If you have questions pertaining to this letter of your Convenience Line of Credit, please contact your local Compass representative.

Very Truly Yours,

Compass Bank

**EXHIBIT B**

# Convenience Line of Credit
# Terms and Conditions

**1. Terms and Conditions:** These Terms and Conditions govern the usage of your Convenience Line of Credit open-end credit account ("Account") issued by Compass Bank ("Compass Bank" or "we," "us," and "our"). The words "you," "your" and "Account Holder" in these Terms and Conditions and in any monthly billing statement mailed to you hereafter refer to a natural person or entity to whom this Account is issued either as applicant or co-applicant. You are receiving these Terms and Conditions either: (a) contemporaneously with your execution of a Business Loan Application (the "Application") and the Convenience Line of Credit Agreement Promissory Note/Guaranty (the "Agreement"); or (b) contemporaneously with your notification from us that your Account has been approved, in which case these Terms and Conditions will be accompanied by (i) a Convenience Line of Credit Acceptance Letter (the "Acceptance Letter"); and (ii) a copy of the Agreement (the Application, Agreement, Acceptance Letter, and Terms and Conditions being sometimes hereinafter collectively referred to as the "Convenience Line of Credit Agreements"). If your Account is a joint account (that is, there was at least one co-applicant who signed the Application and Agreement and who agreed to be obligated on the Account), you promise to pay all amounts due on the joint account and, no matter which Account Holder used the Account, you remain jointly as well as individually liable. Any joint Account Holder is authorized by the other Account Holders to act on their behalf for any purpose under the Convenience Line of Credit Agreements. By using the Account, retaining, using or signing Convenience Line of Credit Checks (as hereinafter defined), or consenting to the use of the Account or Convenience Line of Credit Checks by anyone else, you agree to all terms, conditions or provisions of the Convenience Line of Credit Agreements. In the event that there exists any conflict among any term, condition or provision of the Convenience Line of Credit Agreements, the terms, conditions, and provisions of the Agreement shall control.

**2. Use of Account:** Your Account provides you with an open-end line of credit which you may access by using Convenience Line of Credit Checks furnished by us which have been imprinted with your name and Account number ("Convenience Line of Credit Checks"). YOU HEREBY REPRESENT AND WARRANT TO US THAT YOU WILL USE THE ACCOUNT AND CONVENIENCE LINE OF CREDIT CHECKS EXCLUSIVELY FOR BUSINESS PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES AND THAT WE MAY RELY ON THIS REPRESENTATION AND WARRANTY. You may use Convenience Line of Credit Checks to obtain credit from your Account. We will advance you credit in the amount of each Convenience Line of Credit Check that is presented to and paid by us in accordance with paragraph 5 of these Terms and Conditions. We will also advance you credit in amounts of at least $100 that you request in person at any Compass Bank branch, provided that no Event of Default has occured as defined in Paragraph 18 and that the advance would not cause your credit limit to be exceeded. Such credit shall be referred to herein as "Advances." You may use Convenience Line of Credit Checks to purchase goods or services or obtain cash advances, but you may not use Convenience Line of Credit Checks as payment on the Account. We may dishonor any Convenience Line of Credit Check or other Advance which does not meet all requirements of these Terms and Conditions or any of the other Convenience Line of Credit Agreements.

**3. Your Credit Limit:** The amount noted in your Acceptance Letter as the Approved Credit Line is the amount of your credit limit. Your periodic statements will show your credit limit and your available credit. You promise to keep the amount of credit outstanding at any time within your credit limit. We may demand immediate payment of any amount by which your Account balance exceeds your credit limit. If you request credit in any form which, if granted, would result in your total outstanding balance, including Advances and other charges not yet posted to your Account, being more than your credit limit (whether or not the balance before the request was more than the credit limit), we may: (a) honor the request without permanently raising your credit limit; (b) honor the request and treat the amount which is more than your credit limit as immediately due; or (c) refuse to honor the request. If we refuse to honor a Convenience Line of Credit Check, we may do so by advising the person presenting the Convenience Line of Credit Check that credit has been refused, or, at our sole option, in any other manner. If we have previously honored requests for credit over your credit limit, it does not mean that we will honor further overlimit requests. You agree that, subject to any restrictions of applicable law, we may increase or decrease your credit limit, or cancel your available credit at any time without prior notice to you, without any request or approval from you and without affecting your obligation to pay all amounts that you owe under this Agreement.

**4. Your Basic Obligations:** Your basic obligations under the terms of the Convenience Line of Credit Agreements are:

(a) To assume responsibility, within the limitations of applicable law, for the credit extended to you;
(b) To pay, at such place as we designate, all amounts owing under the Account, including but not limited to all fees described in paragraphs 5, 6, 7, 10 and 11 ("Fees"), and any other proper charges;
(c) To notify us promptly if you suspect that an unauthorized party has used or may use Convenience Line of Credit Checks;
(d) To refrain from using Convenience Line of Credit Checks upon notice from us and to return all Convenience Line of Credit Checks in your possession to us upon receiving such notice;

**EXHIBIT B**

Member FDIC

Your Basic Obligations continued.

(e) To notify us in writing of any change in your mailing address, place of business or principal residence; and
(f) To comply with all other provisions of the Convenience Line of Credit Agreements.

**5. Convenience Line of Credit Checks:** Only Convenience Line of Credit Checks which have been furnished by Compass Bank and which have been imprinted with your Account number may be used to obtain credit from the Account. The Convenience Line of Credit Checks may be signed only by the persons whose names are printed on the Convenience Line of Credit Checks. Each Convenience Line of Credit Check must be for an amount equal to at least $100.00. You agree that we are under no obligation to pay or certify any Convenience Line of Credit Check drawn on your Account. You agree to pay us $20.00 per Convenience Line of Credit Check for any and all Convenience Line of Credit Checks presented to us and returned for any of the following reasons: (a) the Convenience Line of Credit Check is for an amount less than $100.00; (b) payment of the Convenience Line of Credit Check, together with any Fees or other charges payable at such time, would cause your credit limit to be exceeded; (c) any Event of Default has occurred as defined in paragraph 18; (d) your credit privileges have been terminated for any reason; (e) your Convenience Line of Credit Check is post-dated or is dated more than six (6) months prior to the time presented to us; (f) the Convenience Line of Credit Check does not bear your signature (if the Account is issued to a natural person) or an authorized signature (if the Account is issued to a business organization or other entity), or (g) we have for any reason notified you not to use Convenience Line of Credit Checks. We may, however, at our sole option, pay a Convenience Line of Credit Check under any of the conditions listed in this paragraph 5, and you agree to repay us for the amount of any such Convenience Line of Credit Check. The Convenience Line of Credit Check itself shall be evidence of your debt to us. We do not promise that everyone will accept Convenience Line of Credit Checks. We will not be responsible if anyone refuses to accept a Convenience Line of Credit Check or if something you purchase with a Convenience Line of Credit Check is defective or unsatisfactory except as otherwise required by applicable law. You may be liable under applicable law for the unauthorized use of your Convenience Line of Credit Checks.

**6. Stop Payment Requests:** You may request us to stop payment on a Convenience Line of Credit Check or to cancel a stop payment request by contacting Compass Bank at the address found in paragraph 12 of these Terms and Conditions.

You agree to pay us $20.00 per Convenience Line of Credit Check for each request to stop payment, whether or not we actually stop payment. You must tell us the party to whom the Convenience Line of Credit Check is payable, your Account number, and the date, number and amount of the Convenience Line of Credit Check. If you call us to stop payment, we may require a written stop payment request. Unless we have a reasonable opportunity to act before the Convenience Line of Credit Check is paid or approved for payment, we may not be able to stop payment on the Convenience Line of Credit Check (or cancel a stop payment request). A reasonable opportunity means that you contact us at least four (4) hours before we receive a Convenience Line of Credit Check. We will not be liable in any way for any stop payment request (or cancellation of such a request) that we honor, nor will we be liable in any way for our failure to honor any such request if (a) we used ordinary care, or (b) if you gave us incomplete, untimely or erroneous information. Any joint Account Holder is authorized to stop payment on a Convenience Line of Credit Check whether or not that check is signed by such joint Account Holder.

**7. Periodic Statement:** After the close of a monthly billing cycle at the end of which your Account has a debit or credit balance in excess of $1.00, or with respect to which interest is imposed, we will mail to you a periodic statement which will show: (a) the outstanding balance in your Account at the beginning of the billing cycle; (b) the amount, date and a brief description of each Convenience Line of Credit Check or other charge which is debited to your Account during the billing cycle; (c) the amount and a brief description of each payment credited to your Account; (d) the amount, date and brief description of other credits to your Account; (e) the amount of any interest debited to your Account during the billing cycle; and (f) the outstanding balance of your Account on the closing date of the billing cycle.

You agree that we will not return Convenience Line of Credit Checks to you after they have been paid. We will send you copies or images of the front of checks that have been paid upon your written request and your payment of a fee of $5.00 for each such check requested, provided, however, that there will be no such charge for any copy or image of a Convenience Line of Credit Check that, pursuant to your good faith request for documentary evidence of indebtedness, is related to a billing error resolution. Documentary evidence of items paid and received on, and any other records relative to, your Account will be retained by us for the period of time required by applicable law and we are not required to provide copies or images of checks after such time. You agree to act in a prompt and reasonable manner in reviewing your statements and reporting any suspected forgeries or alterations to us. You will have acted in a prompt and reasonable manner if you: (a) request that we send any suspected forged or altered Convenience Line of Credit Check to you within sixty (60) days of the date that we sent to you the statement covering such check, and (b) you report any suspected forgery or alteration to us within thirty (30) days after we send the requested Convenience Line of Credit Check to you. If you fail to both request and report any Convenience Line of Credit Check forgery or alteration to us within the periods specified above, we will not be liable for such exception. Errors in posting, addition, subtraction or calculation, whether by you or us, are subject to correction at any time.

On a joint account, we will send statements and notices to only one of you. We will send you copies or images of periodic statements upon your written request and payment of $5.00 for each page of the periodic statement requested, except that there shall be no charge in the case of a good faith request for documentary evidence of indebtedness related to a billing error resolution.

**8. Interest Charges:** In addition to repaying the credit extended to you, Fees and any other charges payable hereunder, you agree to pay interest on your Account balance as provided below. Advances obtained by use of Convenience Line of Credit Checks will bear interest from the date such Convenience Line of Credit Checks are presented to us for payment. All other Advances will bear interest from the date such Advances are paid by us. On each billing date, we calculate the interest by multiplying the Applicable Rate described in paragraph 9 by the Average Daily Balance of your Account during the billing cycle. To get the Average Daily Balance of your Account, we divide the sum of your Account's daily balances during the billing cycle by the number of days in the billing cycle. Each daily balance consists of the previous daily balance (less unpaid interest, Fees and other charges), plus all Advances and other debits posted to your Account through that day, less all payments and credits posted to your Account through the day.

**9. Applicable Interest Rate:** The interest rate applicable to your Account (calculated based on a year consisting of 360 days) during any given billing cycle shall be equal to the sum of: (a) the Interest Increment designated on the Acceptance Letter; and (b) the "Compass Bank Prime Rate" in effect on the last business day of the calendar month included within that billing cycle (the sum of (a) and (b) being hereinafter referred to as the "Applicable Rate"). Any changes in the Compass Bank Prime Rate will take effect as of the first day of the billing cycle. The Applicable Rate is a variable rate and therefore may change from billing cycle to billing cycle based on increases and decreases in the Compass Bank Prime Rate. Compass Bank Prime Rate as used in these Terms and Conditions is a reference rate established by Compass Bank for use in computing and adjusting interest and is subject to change (increase or decrease) at our discretion. We may lend to others at rates of interest greater or less than Compass Bank Prime Rate and use indices other than Compass Bank Prime Rate. In no event shall the Applicable Rate be less than Compass Bank Prime Rate. You may call us at any time during our normal business hours at 1-800-266-7277 to check on the current Compass Bank Prime Rate.

**10. Payment:** Within twenty-five (25) days after the closing date of each billing cycle, you must pay us at least the minimum payment shown on your periodic statement. All payments must be made in U.S. currency. If the total Account balance is greater than $50.00, the minimum payment will be an amount equal to the sum of: (a) the greater of (i) $50.00 or (ii) 2% of the principal balance of your Account; and (b) any and all amounts past due from previous billing cycles (the sum of (a) and (b) being hereinafter collectively referred to as the "Minimum Payment Due"). If the total Account balance is $50.00 or less, the Minimum Payment Due is the Account balance. In addition, at your option, you may pay a larger amount or the entire new balance and you may make additional payments at any time during a billing cycle. Any partial prepayment shall not affect the obligation to make subsequent Minimum Payments Due as described above and interest will continue to accrue on any remaining Account balance. No payment shall operate as an accord and satisfaction without our prior written approval. Payments and credits to your Account will be applied first to any interest, then to Fees and any other charges, and then to Advances. We will charge you $10.00 if a check that is not drawn on us is submitted as payment for

**EXHIBIT B**

your Account and is returned unpaid because of insufficient funds or for any other reason. We may accept late or partial payments and payments that are marked with restrictive endorsements, including but not limited to, payments endorsed as "payment in full," without losing any of our rights. Payments received at an address other than the address shown on the front of the periodic statement may be subject to a delay in crediting of up to five (5) days after the date of receipt.

**11. Annual Fee and Other Fees:** You agree to pay us a nonrefundable annual commitment fee of $150.00 per year ("Annual Fee") in consideration of the issuance of the Account and the credit made available to you through use of Convenience Line of Credit Checks. The Annual Fee will be posted to your Account in the month that we approve your Account and in the same month in each successive year.

We will also charge to your account: (a) an Overlimit Fee of $15.00 whenever you are "Over the Limit" (as defined in paragraph 24 of these Terms and Conditions); and (b) a Late Fee in the amount equal to the greater of: (i) 5% of the amount due for any given month or (ii) $40. A payment is late when we receive less than the Minimum Payment Due twelve days or more after the Payment Due Date shown on the periodic statement for that month. We will charge the Late Fee only once for any one overdue payment. If, under applicable law we cannot collect the full amount of the above-referenced charges, you agree to pay such lesser amount as is permissible.

**12. Notices:** Any notice you are required to give us hereunder must be in writing and will be effective only when we actually receive it. The address for all notices to us, including change of address, unauthorized use, stop payment requests and others, is as follows:

> Compass Bank
> Attn: Loan Operations
> P. O. Box 10566
> Birmingham, AL 35296

**13. Closing Your Account:** We have no obligation to extend credit to you and we may close or cancel your Account at any time. This includes the right to refuse to pay or dishonor Convenience Line of Credit Checks made prior to the time of closing or cancellation but presented after the Account is closed or cancelled. You may close or cancel your Account at any time by both: (a) notifying us in writing of your intent to do so at the address provided in paragraph 12; and (b) by returning all unused Convenience Line of Credit Checks. If you are in default, we may, in accordance with paragraph 18, require immediate payment of the entire outstanding balance. We may refuse further extensions of credit, but you will remain liable for any Convenience Line of Credit Checks paid by us after the Account is closed or cancelled. Any joint Account Holder is authorized by the other joint Account Holders to close or cancel the Account by written notice to us.

**14. Amendments:** It is important that you know we can change the terms of the Convenience Line of Credit Agreement as provided herein: We will mail or deliver to you, at your last address shown on our records, thirty (30) days prior written notice of any changes being made to the Convenience Line of Credit Agreements in accordance with applicable laws and regulations (respectively the "Applicable Notice Period"). Notice shall be given either: (a) by including a message on your periodic statement; or (b) by a separate written notice. Such changes may include, but shall not be limited to, changes in the Applicable Rate, Fees, other charges and repayment terms. Pursuant to paragraph 24, you have the option: (a) to surrender the Convenience Line of Credit Checks issued for use with the Account and continue to pay off any existing balance in the same manner and under the same terms in effect prior to the changes; or (b) to hold the Convenience Line of Credit Checks beyond such Applicable Notice Period or use the Account during this period, either of which shall constitute your consent to the changes. In the event you consent to the changes, the changes shall apply to all amounts you owe under the Convenience Line of Credit Agreements, including amounts incurred before the effective time of the amendment.

**15. Security Agreement:** We shall have a security interest in any property belonging to you that is in our possession or that secures any existing and future indebtedness to us pursuant to any written security agreement or mortgage identifying such property, except that we expressly waive as security for amounts due hereunder any security interest which we might otherwise have in your principal dwelling or household goods. We may use any deposits or other credit balances you have with us to satisfy amounts you owe us under the Convenience Line of Credit Agreement.

**16. Account Review, Suspension of Credit and Reduction of Credit Limit:** You agree to notify us promptly if any adverse change in your credit or financial condition occurs. We may re-evaluate your financial condition and credit standing at any time. You agree to permit and cooperate with any investigation of your credit record and also to furnish us promptly upon request accurate, up-to-date information concerning your assets and liabilities, true copies of your signed federal income tax returns and verification of your employment and income, as may be applicable. Based upon such a review, we may in our discretion refuse to make any additional Advances under the Account or increase or decrease your credit limit at any time.

**17. Termination of the Account:** Your Account automatically annually renews on each anniversary of the date of our approval of your Account unless:

(a) We have given you written notice of our intent not to renew your account, OR
(b) You have previously closed your Account in accordance with paragraph 13, OR
(c) We have previously closed your Account in accordance with paragraph 13.

==Upon any termination, other than termination due to the occurrence of an Event of Default (as defined under paragraph 18) your account balance will be paid in monthly payments based on a 60 month amortization schedule. You will continue to incur a finance charge calculated at the rates provided in paragraph 9 above until the Account is paid in full.==

**18. Events of Default:** At our option, the occurrence of any one of the following events shall constitute an "Event of Default":

(a) You allow your total Account balance to exceed your credit limit, or fail by the applicable due date to make the Minimum Payment Due as defined in paragraph 10;
(b) You fail to abide by any other terms of the Convenience Line of Credit Agreements;
(c) You default in the performance of any other obligation to us under any other agreement;
(d) You misrepresent any material fact in connection with this Account, the Convenience Line of Credit Agreements or any other existing or future agreement you have entered into with us;
(e) If you are a natural person, you die, or are declared legally incompetent, or are imprisoned;
(f) If you are a business organization or other entity:
 (i) you dissolve or otherwise cease to operate;
 (ii) you are a party to a merger or other reorganization;
 (iii) you sell or otherwise transfer all or substantially all of your assets; or
 (iv) any natural person owning an interest in you dies, is declared legally incompetent, is imprisoned, or sells a majority of his or her interest in you.
(g) You file or have filed against you a petition under a provision of the Bankruptcy Code or amendment thereto, or become insolvent, or suffer an adverse change in your financial condition or personal affairs which in our sole opinion will increase our risk or render our prospect of payment insecure.
(h) Your Convenience Line of Credit Checks are lost or stolen.

Upon the happening of any one or more such Events of Default, we may decide to close your Account in accordance with paragraph 13 of these Terms and Conditions. In addition, at our option, all amounts you owe under the Convenience Line of Credit Agreements shall immediately become due and payable, with or without notice or demand, and you agree to pay all amounts owing under the Convenience Line of Credit Agreements in full immediately (this is known as the right of acceleration). We do not have to notify you or demand payment in order to exercise the above rights unless such action is required by law. In the event of the occurrence of any such Event of Default, we are hereby authorized to remove the indebtedness from our open-end credit files and we shall not be obligated to furnish you any further periodic statements. You agree that we may delay enforcing any of our rights under the Convenience Line of Credit Agreements without losing them. The fact that we waive our rights in one instance shall not mean that we will waive them in other instances. All of our rights can be enforced against your heirs and legal representatives.

**EXHIBIT B**

## U. S. Small Business Administration
### Lender's Transcript of Account

| Name of Borrower | | | | Loan Number | | | |
|---|---|---|---|---|---|---|---|
| Kim Nguyen & Hein Thai dba: Solar Nails | | | | 9348315003 | | | |
| Name of Lender | | | | Amount of Loan | | Interest Day Basis | |
| Compass Bank -SBA | | | | $25,000 | | 365 | |

**Repayment Terms As Stated in the Note**
Date of Default     12/25/2019     Payment Amount     $856.64
Interest Paid to Date     12/10/2019     Guaranty     50.00%
Rate at Default     8.81%

| | | | Application of Payment | | | Interest Paid | | |
|---|---|---|---|---|---|---|---|---|
| Date | Disbursement | Amount Repaid | Principal | Interest | Interest Rate | Interest From | Interest To | New Principal |
| 03/28/17 | 4,000.00 | | | | | 3/28/17 | 3/28/17 | 4,000.00 |
| 04/05/17 | 6,000.00 | | | | | 03/28/17 | 03/28/17 | 10,000.00 |
| 05/10/17 | | 1,000.00 | -783.73 | 62.27 | 8.06 | 03/28/17 | 05/10/17 | 9,216.27 |
| 05/26/17 | | 4,000.00 | -4,000.00 | 0.00 | 8.06 | 05/10/17 | 05/26/17 | 5,216.27 |
| 06/06/17 | 6,000.00 | | | | | 05/26/17 | 05/26/17 | 11,216.27 |
| 07/07/17 | 2,200.00 | | | | | 05/26/17 | 05/26/17 | 13,416.27 |
| 07/26/17 | | 328.66 | -201.91 | 126.75 | 8.31 | 05/26/17 | 07/26/17 | 13,214.36 |
| 07/27/17 | 2,100.00 | | | | | 07/26/17 | 07/26/17 | 15,314.36 |
| 08/10/17 | 2,230.00 | | | | | 07/26/17 | 07/26/17 | 17,544.36 |
| 09/05/17 | 3,000.00 | | | | | 07/26/17 | 07/26/17 | 20,544.36 |
| 09/15/17 | 2,000.00 | | | | | 07/26/17 | 07/26/17 | 22,544.36 |
| 09/21/17 | 2,000.00 | | | | | 07/26/17 | 07/26/17 | 24,544.36 |
| 09/27/17 | | 677.71 | -445.64 | 211.54 | 8.31 | 07/26/17 | 09/27/17 | 24,098.72 |
| 11/16/17 | | 500.00 | -334.44 | 165.56 | 8.31 | 09/27/17 | 11/16/17 | 23,764.28 |
| 12/15/17 | | 500.00 | -311.89 | 188.11 | 8.31 | 11/16/17 | 12/15/17 | 23,452.39 |
| 01/16/18 | | 500.00 | -311.76 | 188.24 | 8.56 | 12/15/17 | 01/16/18 | 23,140.63 |
| 01/25/18 | 1,300.00 | | | | | 01/16/18 | 01/16/18 | 24,440.63 |
| 02/15/18 | | 408.28 | -302.46 | 105.82 | 8.56 | 01/16/18 | 02/15/18 | 24,138.17 |
| 02/22/18 | 800.00 | | | | | 02/15/18 | 02/15/18 | 24,938.17 |
| 04/06/18 | | 1,000.00 | -655.81 | 344.19 | 8.81 | 02/15/18 | 04/06/18 | 24,282.36 |
| 06/12/18 | | 972.00 | -626.50 | 345.50 | 8.81 | 04/06/18 | 06/12/18 | 23,655.86 |
| 08/06/18 | | 946.32 | -594.24 | 352.08 | 9.06 | 06/12/18 | 08/06/18 | 23,061.62 |
| 09/17/18 | | 473.12 | -288.56 | 184.56 | 9.06 | 08/06/18 | 09/17/18 | 22,773.06 |
| 10/16/18 | 900.00 | | | | | 09/17/18 | 09/17/18 | 23,673.06 |
| 12/31/18 | | 1,863.61 | -1,149.96 | 713.65 | 9.31 | 09/17/18 | 12/31/18 | 22,523.10 |
| 05/03/19 | | 1,824.84 | -1,106.87 | 717.97 | 9.56 | 12/31/18 | 05/03/19 | 21,416.23 |
| 09/10/19 | | 1,307.10 | -787.08 | 520.02 | 9.31 | 05/03/19 | 09/10/19 | 20,629.15 |
| 12/10/19 | | 856.64 | -508.86 | 347.78 | 8.81 | 09/10/19 | 12/10/19 | 20,120.29 |
| 02/07/20 | | 433.21 | -433.21 | | | 12/10/19 | 12/10/19 | 19,687.08 |
| 03/05/20 | | 412.58 | -412.58 | | | 12/10/19 | 12/10/19 | 19,274.50 |

I certify this to be a True Copy of the Transcript of Account

_[signature]_
**Crystal Conner-Tate**

Loan Resolution
Specialist                              6/24/2020
**Title**                                  **Date**

SBA Form 1149  (3-00)  REF SOP 5050    Previous Editions Obsolete

Page 1

**EXHIBIT C**

# ASSIGNMENT

U.S. Small Business Administration

FOR VALUE RECEIVED, in accordance with SBA Form 750 executed by

Name of Lender:   BBVA USA

("Lender" or "Assignor"),  and in accordance with Loan Program Requirements, as that term is defined in 13 C.F.R. Part 120, Lender assigns, grants, conveys and transfers to the Assignee, the U.S. Small Business Administration ("SBA"), all right, title and interest in and to  SBA 7(a) Loan

Number: 9348315003          made to   Name of Borrower: Kim Mai Nguyen & Hein Thai dba: Solar Nails
on  Date:   03/24/17       , including all Loan Documents, Loan Instruments, and any associated security instruments, mortgages or deeds of trust (the "Loan").

Assignor authorizes the United States of America on behalf of the SBA to ask, demand, receive, collect, sue and take all lawful actions for recovery of the moneys due or to become due on this Loan, and further that the United States of America on behalf of the SBA may avail itself of its remedies under 31 U.S.C. § 3701, et seq., and/or any other remedies available at law or equity for collection of the Loan and the claim or debt evidenced by the Loan.

Assignor has not done and will not do anything to hinder or prevent the United States of America on behalf of the SBA from enforcing recovery on this Loan.  Assignor agrees to timely execute such other documents as are requested by SBA to effectuate recordation or as otherwise requested by SBA to assist it in collection of the Loan.  Any proceeds, payment or value of any kind with respect to the Loan or obligations secured or evidenced thereby that are received by Assignor or Assignee shall continue to be shared in accordance with the SBA Form 750 guarantee agreement covering this loan. The Assignor agrees that SBA reserves all rights and authority under 13 C.F.R. Part 120, including without limitation under 13 C.F.R. § 120.524.  This Assignment shall be interpreted and construed under federal law.

The Assignor's address is:

| | |
|---|---|
| Lender Name | BBVA USA |
| Address | 8080 North Central Expressway. 2nd Floor |
| City | Dallas |
| State | Texas |
| Zip | 75206 |

**EXHIBIT D**

The Assignee address is: United States of America, Small Business Administration,
(Please mark the applicable address)

☐ National Guaranty Purchase Center (NGPC)
1145 Herndon Parkway Suite 900
Herndon, VA 20170

☒ Commercial Loan Service Center (CLSC) - AR
2120 Riverfront Drive Suite 100
Little Rock, AR 72202

☐ Commercial Loan Service Center (CLSC) - CA
801 R Street Suite 101
Fresno, CA 93721

In witness whereof, Lender, through its authorized representative and officer listed below, has executed this instrument on Date: 05/28/20

Name of Lender: BBVA USA
BY: Robert Zazula
Title: Loan Resolution Specialist III / Bank Officer
Address: 8080 North Central Expressway, 2nd Floor
City: Dallas
State: Texas
Zip Code: 75206

Signed, sealed and delivered in the presence of:

NOTARY PUBLIC

Commission Expires: _____

T-LANIE R. KNOX
NOTARY PUBLIC - STATE OF TEXAS
ID # 1003013-8
COMM. EXP. 03-17-2022

**EXHIBIT D**



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U.S. SMALL BUSINESS ADMINISTRATION
CHIEF INFORMATION OFFICER
<u>CERTIFICATE OF INDEBTEDNESS</u>

Hien Thai dba Solar Nails
3017 Hibiscus Dr
Garland, TX 75040
**SSN:XXX-XX-0021**

Kim Mai Nguyen
3600 Gus Thomasson Rd
STE 155
Mesquite, TX 75150
**SSN:XXX-XX-5368**

**TRFM14966672**

I hereby certify, as part of my duties with the U.S. Department of the Treasury, Bureau of the Fiscal Service, Disbursement and Debt Management (Treasury), including referring matters to the U.S. Department of Justice (DOJ) for litigation, I am a custodian of records of certain files sent by the U.S. Small Business Administration (SBA) to Treasury for collection actions. As a custodian of records for Treasury, I have care and custody of records relating to the debt owed by **Hien Thai dba Solar Nails and Kim Mai Nguyen (DEBTORS)** to SBA.

The information contained in this Certificate of Indebtedness is based on documents created by an employee or contractor of SBA based on his/her knowledge at or near the time the events were recorded, or by an employee or contractor of Treasury based on his/her knowledge at or near the time the events were recorded. Treasury's regular business practice is to receive, store and rely on the documents provided by SBA, when debts are referred to Treasury for collection activities, including litigation. Further, I certify that I am familiar with Treasury's record keeping practice, including the receipt of files from SBA.

On March 24, 2017, the DEBTORS executed a promissory note and unconditional guarantee loan agreement for $25,000.00, with interest accruing at variable rates, except as otherwise provided within the Promissory Note with Compass Bank (LENDER).

The DEBTORS became delinquent on the obligation on December 25, 2019, with a balance due of $19,274.50, due to the delinquency the SBA had to pay the guaranteed interest and became holder of the Note. SBA referred the debt to Treasury for collection on June 22, 2022.

On May 30, 2025, Treasury referred the debt to DOJ for litigation and collection in the amount due of $19,274.50, with daily interest of $4.92. As of August 13, 2025, the DEBTORS is indebted to the United States in the amounts stated as follows:

1

**EXHIBIT E**



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U.S. SMALL BUSINESS ADMINISTRATION
CHIEF INFORMATION OFFICER
<u>CERTIFICATE OF INDEBTEDNESS</u>

| | |
|---|---|
| Principal: | $ 19,274.50 |
| Interest(@9.31%): | $ 8,883.79 |
| Admin Fees: | $ 10,160.20 |
| **Total:** | **$ 38,131.16** |

The balance stated in the debt listed above are current as of August 13, 2025 including any applicable interest, penalties, administrative fees, and Treasury & DOJ fees (pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note).

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by SBA and information contained in Treasury's records.



Natalie Stubbs
Financial Program Specialist
U.S. Department of the Treasury
Bureau of the Fiscal Service
Date: 08/13/2025

2

**EXHIBIT E**